Filed 5/14/26  Potts v. WestPac Labs CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JASMINE POTTS,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>WESTPAC LABS, INC.,<br><br>Defendant and Respondent. | F089849<br><br>(Super. Ct. No. BCV-24-101925)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING**<br>[NO CHANGE IN JUDGMENT] |

**THE COURT:**

It is ordered that the nonpublished opinion filed herein on April 24, 2026, be modified as follows:

On page 18, the last sentence of the paragraph under the heading "**DISPOSITION**" beginning with "WestPac" and ending with "costs on appeal" is deleted in its entirety and replaced with the following sentence and footnote 9:

WestPac is entitled to its costs on appeal.[1]

Except for the modification set forth above, the opinion previously filed remains unchanged.  This modification does not effect a change in the judgment.

Appellant Potts's petition for rehearing filed on April 27, 2026, is denied.

---

[1]    We express no opinion as to whether the trial court may consider appellant's ability to pay in awarding allowable costs on appeal.

                                                                DE SANTOS, J.

WE CONCUR:


DETJEN, Acting P. J.


MEEHAN, J.

Filed 4/24/26  Potts v. WestPac Labs CA5 (unmodified opinion)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JASMINE POTTS,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>WESTPAC LABS, INC.,<br><br>    Defendant and Respondent. | F089849<br><br>(Super. Ct. No. BCV-24-101925)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Bernard C. Barmann, Jr., Judge.

Jasmine Potts, in pro. per., for Plaintiff and Appellant.

David Wright Tremaine, Zana Bugaighis and Mark Anishchenko for Defendant and Respondent.

-ooOoo-

Jasmine Potts, who was self-represented below and is self-represented on appeal, filed a first amended complaint against WestPac Labs, Inc. (WestPac), among other defendants.  Although the trial court clerk entered default as to WestPac upon Potts's request, the trial court subsequently sua sponte set aside the default.  The court thereafter granted WestPac's demurrer to the first amended complaint without leave to amend.  Potts appealed.  We affirm.

# FACTS AND PROCEDURAL HISTORY

***The Operative Complaint***

On June 11, 2024, Potts filed a civil complaint in the Kern County Superior Court. The complaint named Kern Medical Center and its outpatient clinics; Kern Allergy Medical Clinic; and Laboratory Corporation of America Holdings, as defendants. On July 3, 2024, Potts filed a first amended complaint (FAC) that added WestPac as an additional defendant; WestPac was not named as a defendant in the original complaint. The FAC is the operative complaint in this matter.

The FAC alleged that starting in March 2024, Potts and her children sought medical care because "she was sick, as were her children, and [she] suspected it was due to mold in her apartment." Potts initially obtained medical care for herself and her children at Kern Medical Center and its associated clinics. Eventually, Potts sought and obtained specialized allergy care at Kern Allergy Medical Clinic for all four of her children, "for suspected mold exposure." Providers at Kern Allergy Medical Clinic ordered allergy tests or "blood allergy panels" for all four children.

The FAC asserted the tests were performed at a WestPac lab on Stockdale Highway in Bakersfield.[2] Two of the children were tested on April 10, 2024, and the other two children were tested on April 12, 2024.[3]

The FAC alleged that when Potts took her children to WestPac's lab for testing, she was told "she could sign up … online to receive the [test] results." Potts attempted to register her children on WestPac's online portal on April 12, 2024 and April 17, 2024, to obtain their test results, but was unable to obtain their test results.

The FAC further alleged that "[o]n April 26, 2024, [Potts] still had not received access to her children's allergy panel results through the online platform." The FAC added: "After multiple failed call attempts, West[P]ac laboratories['] Customer Service Representative contacted the Bakersfield laboratory [and] connected [Potts] with them directly[,] and [Potts] was finally instructed to submit a Medical Records Release (MMR) and Authorization-to-Release Form. [Potts] submitted one for each child the same day." The FAC continued: "On April 29, 2024, [Potts] received an email from [a] WestPac Labs, Inc. Customer Service Representative … with her children's allergy panel results."

---

[2] The FAC alleged that Potts saw a notice on the door of the lab stating that "WestPac Labs, Inc. was converting to LabCorp by the end of the month." In its respondent's brief, WestPac states: "Laboratory Corporation of America Holdings ('LabCorp') is a co-defendant in this action that provides clinical laboratory services. [Citation.] LabCorp was in the process of acquiring WestPac's assets when [Potts] alleges she took her children to a WestPac location for bloodwork." A declaration from WestPac's counsel included in the record indicated that while LabCorp purchased WestPac's assets, "the structure of the asset sale resulted in WestPac remaining a separate, individual legal entity from LabCorp." The record further indicated that on November 19, 2024, the trial court granted LabCorp's demurrer without leave to amend in this matter.

[3] In its respondent's brief, WestPac notes, with respect to medical records of the children that were attached to the FAC: "[E]xhibits [Potts] attached to the FAC appear to contradict the FAC's own allegations, as the exhibits suggest that all bloodwork was completed by LabCorp, and not WestPac as alleged by the FAC."

3.

The allegations implicating WestPac related to blood allergy testing of Potts's children; there was no allegation in the FAC that Potts herself underwent tests at WestPac. In addition to the factual allegations implicating WestPac, the FAC contained various factual allegations concerning medical providers at Kern Medical Center and its clinics, as well as at Kern Allergy Medical Clinic. Such allegations are not relevant to this appeal.

The FAC asserted seven causes of action; however, it did not specify to which defendant or defendants each cause of action pertained. The causes of action alleged violations of, respectively: (1) Health and Safety Code sections 123100 to 123149.5 (full chapter: patient access to health records); (2) Business and Professions Code section 2266 (requiring preservation of medical records by physicians and surgeons for seven years); (3) Civil Code section 56 (entire Confidentiality of Medical Information Act (CMIA)); (4) Business and Professions Code section 810 (prescribing disciplinary action for false or fraudulent claims by healthcare professionals); (5) Civil Code section 1710 (deceit); (6) Penal Code section 471.5 (codifying misdemeanor offense of falsifying medical records with fraudulent intent); and (7) California Code of Regulations, title 22, section 70707 (requiring hospitals to adopt and publicly post list of patients' rights).

The FAC's prayer for relief requested, inter alia, "compensatory damages in an amount to be determined at trial"; "punitive damages in an amount sufficient to punish Defendant [*sic*] for their wrongful conduct and deter future misconduct"; and "injunctive relief requiring Defendant [*sic*] to comply with all applicable laws and regulations governing medical records and patient rights."

Critically, for purposes of this appeal, the summons on the FAC was not issued until January 31, 2025, *over six months after the FAC was filed*. Prior to the issuance of the summons for the FAC, Potts on November 13, 2024, served WestPac with the FAC and the summons for the *original complaint*, which summons did *not* name WestPac (as noted above, WestPac was not named as a defendant in the original complaint). It does

4.

not appear that Potts ever served WestPac with the summons on the FAC.  Similarly, Potts never served WestPac with a notice of punitive damages.

***Potts's Request for Entry of Default and WestPac's Subsequent Filings***

On December 20, 2024, *before* issuance of a summons on the FAC and *before* Potts served WestPac with a notice of punitive damages, Potts filed a request for entry of default against WestPac in the trial court.[4]  On December 23, 2024, the trial court clerk entered default as requested.

On December 26, 2024, counsel for WestPac filed, for the first time, a notice of appearance in the matter.  At the time counsel filed a notice of appearance, she was not aware that the trial court clerk had entered WestPac's default on December 23, 2024.  Rather, as reflected in a declaration by WestPac's counsel included in the record, counsel believed "[Potts] had not properly served WestPac with an operative complaint."  On January 21, 2025, Westpac filed a demurrer to Potts's FAC, to be heard on March 6, 2025.

Shortly after filing its demurrer to the FAC, WestPac first learned that a default had been entered.  WestPac met and conferred with Potts regarding a stipulation to set aside the default.  Potts did not agree to stipulate to set aside the default.  Accordingly, WestPac filed, pursuant to Code of Civil Procedure section 473, a motion for relief from default, to be heard on February 27, 2025.

On February 11, 2025, the trial court, acting sua sponte, set aside the default entered against WestPac on December 23, 2024, finding it was entered in error and was void.  Specifically, the court ruled in a written minute order:  "Upon the court's own motion[,] the … default entered on 12/23/2024 as to West Pac Labs, Inc. was entered in error.  No statement of damages was served on the defendant.…  The first amended complaint was filed 7/3/2024 adding the new party West Pac Labs, Inc.  [The] service [on

---

[4]     As noted, WestPac was *first* named as a defendant in the FAC.

5.

WestPac] was premature as service was stated to be completed as of 11/13/2024. However; the summons as to the first amended complaint was not issued and filed until 1/31/2025." (Capitalization omitted.) The court's minute order was served on all parties. On February 13, 2025, WestPac withdrew its pending motion for relief from default. However, WestPac's demurrer to the FAC, filed on January 21, 2025, remained pending.

Once WestPac's default was set aside, Potts filed an opposition to WestPac's pending demurrer and, later, a sur-reply to WestPac's reply to her opposition. In her papers, Potts did not request leave to amend the FAC. On March 6, 2025, the trial court heard argument on the demurrer. The court sustained the demurrer without leave to amend and dismissed the FAC with prejudice.

The court followed up with a written order on March 12, 2025. The court's order provided:

> "The Court having considered all papers and evidence submitted, the arguments of Plaintiff and counsel for WestPac, and good cause appearing therefo[r], hereby orders as follows:
>
> "1.    WestPac's Demurrer is sustained in its entirety as to each cause of action in the [FAC], without leave to amend, as Plaintiff does not have standing to pursue [on her children's behalf] the claims alleged in the [FAC,] and because the [FAC] fails to state a cause of action against WestPac;
>
> "2.    The [FAC] is dismissed with prejudice against WestPac; and
>
> "3.    That judgment be entered in favor of WestPac [and] against Plaintiff."

## DISCUSSION

### I.    STANDARD OF REVIEW

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled." (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.) "When a demurrer is sustained, we determine [de novo] whether the complaint states facts sufficient to constitute a cause of

6.

action." (*Ibid.*) In doing so, we "give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Ibid.*) "Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law." (*Ibid.*)

When a demurrer is sustained without leave to amend, we review the denial of leave for abuse of discretion. (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1469.) It is an abuse of discretion for the trial court to sustain a demurrer without leave to amend "if there is a reasonable possibility the plaintiff can amend the complaint to allege any cause of action." (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 711; see *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

We review de novo the trial court's determination that a default entered by the clerk is null and void. (*Trackman v. Kenney* (2010) 187 Cal.App.4th 175, 182 [whether a default or default judgment is void due to improper service is a question of law that we review de novo].) And a ruling setting aside a default or default judgment is reviewed for abuse of discretion. (*Grappo v. McMills* (2017) 11 Cal.App.5th 996, 1006.)

## II. TRIAL COURT DID NOT ERR IN SUA SPONTE SETTING ASIDE THE DEFAULT ENTERED AGAINST WESTPAC AS NULL AND VOID

### A. *Default Was Void as Trial Court Did Not Have Jurisdiction Over WestPac When it Was Entered; Hence, Court Properly Set it Aside*

As noted, on December 23, 2024, a trial court clerk entered WestPac's default on the FAC, before issuance of the summons on the FAC and despite the fact that Potts had not yet served a notice of punitive damages on WestPac. Thereafter, on February 11, 2025, the trial court sua sponte set aside the default as improperly entered and void. WestPac had filed a motion for relief from the default but withdrew the motion after the court sua sponte set aside the default.

7.

Potts challenges the trial court's ruling setting aside the default. Potts contends: "Rather than issuing a ruling based on the noticed motion and evidence submitted, the trial court constructed its own rationale for setting aside the default—one that was neither requested by [WestPac], briefed by the parties, nor supported by the record. The [court's] February 11, 2025 ruling asserted that default was entered in error because no statement of damages had been served and because the summons was not issued until January 31, 2025 [citation]. This rationale was demonstrably false because no statement of damages was required and an amended summons had been submitted to the court months earlier in July 2024." Potts adds that she was deprived of an "opportunity to be heard," and that the court's ruling "violated fundamental principles of procedural due process."

WestPac responds: "The trial court properly found *sua sponte* that the December 23, 2024 default was entered in error, as it was taken before the summons on the FAC naming WestPac as a defendant was even issued, much less served. [Citation.] The record is plain that the summons WestPac was served with on November 13, 2024, was the summons on the Original Complaint, and that neither the summons nor the Original Complaint named WestPac as a defendant. [Citation.] The record is also plain that the summons for the FAC naming WestPac did not issue until January 31, 2025— more than a month after the void default was taken." (Fn. omitted.) WestPac adds: "Because [Potts] did not properly serve WestPac with a valid summons in accordance with statutory requirements, the trial court did not have jurisdiction to take WestPac's default in December 2024. [Citation.] As such, the trial court did not err when it later found *sua sponte* that the earlier default was a void nullity."

WestPac's contentions are persuasive. Valid service of process is a mandatory prerequisite for a trial court to obtain personal jurisdiction over a defendant. (*O.C. Interior Services, LLC v. Nationstar Mortgage*, *LLC* (2017) 7 Cal.App.5th 1318, 1330– 1331 (*O.C. Interior Services*) ["To establish personal jurisdiction, it is essential to

8.

comply with the statutory procedures for service of process."]; *Stancil v. Superior Court* (2021) 11 Cal.5th 381, 392 ["Ordinarily, a court gains jurisdiction over the defendant from the time the defendant is served with a copy of the summons and the complaint on which it's based.… A valid summons must contain information such as … the names of the parties."].)

Code of Civil Procedure section 412.20, subdivision (a) requires service of the summons on the defendant. A summons must contain the names of the parties to the action. (*Ibid*.) If the complaint is amended to add a new party defendant, "an amended or new summons naming that party as a defendant must be issued and served upon the new defendant, since no jurisdiction would be obtained by serving [the new party] with a copy of a summons that does not name [the party]." (Judicial Council comment to Code Civ. Proc., § 412.10; see *W.H. Marston Co. v. Kochritz* (1926) 80 Cal.App. 352, 361 ["An amended complaint must be served upon all defendants who have appeared in the action. If any defendants have not appeared, *a summons must be issued upon the amended complaint*, and served upon such defendants." (italics added)].) "Knowledge by a defendant of an action will not satisfy the requirement of adequate service of a summons and complaint." (*County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1226 (*Gorham*); *American Express Centurion Bank v. Zara* (2011) 199 Cal.App.4th 383, 392.)

Here, the original complaint was filed on June 11, 2024, and the summons was issued on June 12, 2024; neither the original complaint, nor the summons, named WestPac as a defendant. The FAC, filed on July 3, 2024, first named WestPac as a defendant *but* the summons on the FAC was not issued until January 31, 2025. Although Potts filed, on December 10, 2024, a proof of service showing service on WestPac on November 13, 2024, of the FAC and a summons, it stands to reason that the summons reflected in the proof of service was *the summons on the original complaint* (which summons did not name WestPac as a defendant).

9.

Nonetheless, on December 23, 2024, Potts took default on WestPac *based on defective service of process* and *a defective proof of service* in that the *summons served on WestPac was invalid as to WestPac*.  The proper summons naming WestPac had not even been issued by the court at that point, let alone served on WestPac.  In short, the trial court lacked personal jurisdiction over WestPac at the time default was entered.

A trial court that lacks personal jurisdiction over a defendant cannot enter the latter's default.  (*Lunnun v. Morris* (1908) 7 Cal.App. 710, 715–716 ["The entry of the default is not a step in acquiring jurisdiction, but an act done after jurisdiction has been acquired by the court."]; *People v. Tafoya* (2025) 109 Cal.App.5th 868, 904 (*Tafoya*) ["A default may not be entered unless the court has acquired *in personam* jurisdiction over the respondent through service of process."].)  Indeed, "[w]here a court lacks jurisdiction, the clerk's entry of a default is a nullity."  (*Eveleth v. American Brass & Iron Foundry* (1962) 203 Cal.App.2d 41, 45 (*Eveleth*); see *O.C. Interior Services*, *supra*, 7 Cal.App.5th at p. 1331 [defaults entered without personal jurisdiction are " 'for all purposes a nullity—past, present and future' " and a resulting default judgment has no effect on the parties' rights].)

A party can seek to set aside an improperly entered and void default by bringing a motion under Code of Civil Procedure section 473 (as WestPac did here).  However, when a default is "void on its face," as for example when it is entered prematurely, it "is not necessarily governed by [Code of Civil Procedure] section 473 inasmuch as the judgment may be vacated or set aside by the court on its own motion."  (*Eveleth*, *supra*, 203 Cal.App.2d at p. 47; *Montgomery v. Norman* (1953) 120 Cal.App.2d 855, 857–858 ["A judgment, void on its face, is not governed by Code of Civil Procedure, section 473. [Citation.]  Such a judgment may be vacated upon motion or may be set aside by the court on its own motion."]; *Woods v. Stallworth* (1960) 177 Cal.App.2d 517, 520–521 (*Woods*) [when the "void character of the entry of the default appear[s] on the face of the

10.

record[, it is] *the duty of the court* upon application of the party *or of its own motion* to vacate the void entry of the default" (italics added)].)

Here, the clerk's entry of default was void on its face because at the time of entry, WestPac had not been served with the summons on the FAC, which summons had not even been issued by the court. Rather, WestPac was served with the summons on the original complaint, which summons did not name Westpac as a defendant. In turn, at the time default was entered, the trial court lacked personal jurisdiction over WestPac. All of this was apparent from the face of the record. (See *Gorham*, *supra*, 186 Cal.App.4th at p. 1226 [a judgment or order is void on its face "when the defects appear without going outside the [court] record," and without recourse to extrinsic evidence, such as declarations]; *Tafoya*, *supra*, 109 Cal.App.5th at p. 904 [" 'The clerk has no authority to enter the default of a defendant in the absence of valid proof of service of summons.' "]; *Westport Oil Co. v. Garrison* (1971) 19 Cal.App.3d 974, 977–978 (*Westport*) ["The clerk's power and authority to enter a default is conferred by Code of Civil Procedure section 585 [which requires proper service of process].… [¶] Where the clerk acts in excess of the limited power conferred on him by statute, his action is a nullity."].) Thus, the court acted properly in vacating the default. (*Id.* at p. 978 [without proper service of process, the clerk does not have the power to enter default and his or her act of doing so is void].)

We conclude the trial court correctly found the clerk had improperly entered the default, which was void. We further conclude that, irrespective of WestPac's pending motion under Code of Civil Procedure section 473, the trial court had the authority to set aside the default on its own motion and properly did so, thereby allowing the case to proceed to the demurrer stage.[5]

---

[5] When WestPac appeared in the matter on December 26, 2024, its default had already been taken on December 23, 2024; but WestPac was not aware of it.

**B.      Trial Court Properly Found Default Was Void and Properly Vacated it, Because Potts Did Not Serve Notice of Punitive Damages on WestPac**

In refuting Potts's argument that the trial court acted improperly in sua sponte vacating the default, WestPac further argues: "Even if WestPac had been properly served in this action before default was entered—which it was not and could not have been—the trial court's order setting aside the default would remain correct because [Potts] failed to serve WestPac with a statement of damages before seeking entry of default.  [Citation.] Service of a statement of damages is a mandatory pre-requisite to seeking entry of default when the complaint seeks punitive damages.  (Code of Civ. Proc.[,] § 425.115[,] subd. (f); *Behm v. Clear View Technologies* (2015) 241 Cal.App.4th 1, 8–11.)"  (Boldface omitted.)  WestPac adds: "The requirement is based on fundamental due process concerns, as '[a] defendant is entitled to actual notice of the liability to which he or she may be subjected, a reasonable period of time before default may be entered.'  (*Behm*, *supra*, 241 Cal.App.4th at [p. ]10 [italics omitted], quoting *Matera v. McLeod* (2006) 145 Cal.App.4th 44, 61.)"

We agree with WestPac that the trial court correctly found that the default, in addition to being void for lack of valid service of summons, was premature because Potts did not serve WestPac with a notice of punitive damages.  (See *Behm v. Clear View Technologies*, *supra*, 241 Cal.App.4th at p. 10.)

**C.      Trial Court Did Not Violate Potts's Due Process Rights in Sua Sponte Vacating the Default Taken Against WestPac**

Potts contends that in ruling sua sponte that the default taken as to WestPac was improperly entered and void, the trial court somehow violated *her* due process rights. Potts's argument is not entirely clear.  To the extent Potts suggests the court should have held a hearing before vacating the default, Potts does not provide any relevant authority to develop or support her bare claim.

The trial court's action in vacating the default did not bear on Potts's substantive rights or the merits of her claims in the FAC.  Rather, as discussed above, the court had a

12.

duty to act because it was apparent *on the face of the record* that the default was entered when the court did not have personal jurisdiction over WestPac.  (See *Woods*, *supra*, 177 Cal.App.2d at p. 521.)  Indeed, as noted, the summons on the FAC had not even been issued at the time of entry of default, let alone served on WestPac.

After the trial court set aside the default entered as to WestPac, Potts did not move to correct the record by filing a sufficient affidavit of service of the FAC and the *operative summons* (i.e., the summons on the FAC) on WestPac, or seek to set aside the court's February 11, 2025 order vacating the default.

We conclude Potts has not established that in sua sponte setting aside the default under the applicable circumstances, the trial court violated her due process rights. Similarly, we are not persuaded by Potts's suggestion that the court was required to hear and rule on WestPac's motion to set aside the default, which motion was ultimately withdrawn.

### D.      Trial Court Properly Permitted Case to Proceed to Demurrer Stage

Potts also contends that the trial court erroneously "permitted [WestPac] to proceed [to demurrer] without a valid order setting aside default."  She adds:  "The demurrer was filed on January 21, 2025 [citation], opposed by [Potts on February 24, 2025] [citation], and sustained without leave to amend on March 6, 2025."  She continues:  "[The court's] deviation from established procedure substantially prejudiced [Potts], who was forced to respond to the demurrer under compressed time and without clarity regarding the procedural posture of the case."

Preliminarily, we note that the trial court's February 11, 2025 ruling setting aside the default taken against WestPac was set forth in a written order; the written order explained the court's reasoning and was promptly served on all parties.  As explained above, the court's order was valid and proper.  Moreover, the court's written ruling listed future hearings to be held before the court, including the March 6, 2025 hearing on WestPac's demurrer to the FAC.  We conclude Potts had adequate notice of the

13.

procedural posture of the case for purposes of responding to WestPac's pending demurrer.

Potts's contention that she was "forced to respond to the demurrer under compressed time" is also not persuasive. Under California law, the non-moving party is entitled to 16 days' written notice of a demurrer. (Code Civ. Proc., § 1005, subd. (b).) WestPac served notice of its demurrer on January 21, 2025, 32 court days before the March 6, 2025 hearing date. The trial court issued and served its February 11, 2025 order *more than* 16 court days before the March 6, 2025 hearing. Potts therefore had the full statutory period, plus more time, to oppose the demurrer. (Code Civ. Proc., § 1005, subd. (b).) Potts duly filed an opposition to the demurrer, as well as an unauthorized sur-reply,[6] both of which were considered by the trial court. She also appeared and was heard at the demurrer hearing.

To the extent Potts suggests the trial court erred in accepting WestPac's demurrer after entry of default against WestPac, her contention is unavailing because, as explained above, the default was void on its face, rendering it a nullity. (*Eveleth*, *supra*, 203 Cal.App.2d at p. 45 ["Where a court lacks jurisdiction, the clerk's entry of a default is a nullity."].) As a void order, it did not have the power to bind WestPac or strip WestPac of the right to respond to the FAC. (*O.C. Interior Services*, *supra*, 7 Cal.App.5th at p. 1330 ["A void judgment [or order] is, in legal effect, no judgment. By it no rights are divested. From it no rights can be obtained. Being worthless in itself, all proceedings founded upon it are equally worthless. It neither binds nor bars anyone." (bracketed text in original)].) Here, once the court declared the default void and vacated it, it could not preclude the court from considering the demurrer.

---

**6** Although WestPac asked the trial court to strike Potts's sur-reply, the trial court expressly considered the sur-reply, as noted in its March 6, 2025 minute order sustaining WestPac's demurrer.

We conclude Potts has not established error—let alone reversible error—on the part of the trial court in permitting the matter to proceed to the demurrer stage. (See *People v. Anzalone* (2013) 56 Cal.4th 545, 553 [an appellant bears the burden of establishing both that an error occurred and that the error was prejudicial, which requires a showing of "a reasonable probability that in the absence of the error he or she would have obtained a more favorable result"].)

## III. POTTS HAS NOT SHOWN THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING LEAVE TO AMEND WHEN IT GRANTED WESTPAC'S DEMURRER

Potts does not challenge the trial court's sustainment of WestPac's demurrer to the FAC. Rather, she simply argues that "[t]he trial court abused its discretion by denying leave to amend." (Some capitalization omitted.)

It is an abuse of discretion for the trial court to sustain a demurrer without leave to amend "if there is a reasonable possibility the plaintiff can amend the complaint to allege any cause of action." (*Smith v. State Farm Mutual Automobile Ins. Co.*, *supra*, 93 Cal.App.4th at p. 711; see *Schifando v. City of Los Angeles*, *supra*, 31 Cal.4th at p. 1081.) "To prove such abuse of discretion, however, the plaintiff must demonstrate how the complaint can be amended. [Citation.] While such a showing can be made for the first time to the reviewing court [citation], it must be made." (*Smith*, at p. 711.) "To satisfy that burden on appeal, a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' " (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43.) While amendments are generally liberally permitted, "[n]othing in this policy of liberal allowance … requires an appellate court to hold that the trial judge abused his discretion if on appeal the plaintiffs can suggest no legal theory or state of facts which they wish to add by way of amendment." (*HFH, Ltd. v. Superior Court* (1975) 15 Cal.3d 508, 513,

15.

fn. 3 [" '[The] burden is on the plaintiff to demonstrate that the trial court abused its discretion.' "].)

Here, the facts alleged in the FAC as to WestPac were simply that WestPac had conducted blood allergy tests for Potts's four children; Potts attempted to access the test results for her children online; she was eventually directed to upload privacy waivers; and thereafter she received her children's test results via email.

As noted, the trial court sustained WestPac's demurrer to the FAC without leave to amend. The court explained: "WestPac's Demurrer is sustained in its entirety *as to each cause of action* in the [FAC], *without leave to amend*, as Plaintiff does not have standing to pursue [on her children's behalf] the claims alleged in the [FAC,] and because *the [FAC] fails to state a cause of action against WestPac*." (Italics added.)

Potts does not challenge the court's findings that (1) she lacked standing to bring claims on behalf of her children, and (2) the claims and allegations in the FAC did not state *any* cause of action against WestPac. Rather, Potts simply challenges the trial court's denial of leave to amend. Potts's *entire* argument challenging the court's ruling, in her opening brief, is as follows: "The trial court erred when it sustained the demurrer without leave to amend [citation], despite the fact that this was [Potts's] first opportunity to oppose a responsive pleading, and no evidentiary hearing was held to determine the sufficiency of the claims. It is a well-established rule that leave to amend must be granted unless the complaint's defects cannot be cured by amendment. [Citation.] The trial court's error to not allow [Potts] this opportunity was an abuse of discretion warranting reversal."

WestPac responds: "[Potts's] Opening Brief does not challenge the trial court's findings in sustaining WestPac's demurrer to the FAC. [Citation.] … [T]he Opening Brief is silent on the trial court's findings that [Potts] does not have standing to prosecute the claims alleged against WestPac. [Citation.] The Opening Brief also fails to address the trial court's findings that the facts pleaded in the FAC failed to state a cause of action

16.

against WestPac. [Citation.] [¶] [Potts] has failed to raise these issues in the Opening Brief, and this Court should deem the issues forfeited accordingly."

WestPac adds: " 'Issues not raised in an appellant's brief are deemed waived or abandoned.' (*Limon v. Circle K Stores Inc*. (2022) 84 Cal.App.5th 671, 687, quoting *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6.) This includes issues the appellate court reviews *de novo*. (*Reyes*, *supra*, 65 Cal.App.4th at [p.] 466, fn. 6 ('Although our review of a summary judgment is *de novo*, it is limited to issues which have been adequately raised and supported in plaintiffs' brief.').) "

With regard to Potts's argument that the trial court abused its discretion in denying leave to amend, WestPac counters: "[Potts] did not request that the trial court grant her leave to amend the FAC. [Citation.] As such, the trial court sustaining WestPac's demurrer without leave to amend cannot be an abuse of discretion.[7] And while the Opening Brief claims the trial court's action was an abuse warranting reversal, [Potts] still fails to identify how she intends to amend the FAC and how that amendment would cure its fatal deficiencies. [Citation.] The burden to show how the FAC can be amended and cured rests squarely with [Potts], [but] the Opening Brief does not even attempt to meet this burden."

We agree with WestPac that Potts has forfeited any challenge to the trial court's determinations (1) that Potts did not have standing to bring claims on behalf of her children and (2) that, regardless, the FAC did not state a cause of action against WestPac, by not addressing these determinations in her opening brief.[8] We further agree with

---

[7] We note that "[a]lthough a plaintiff need not request leave to amend in order to preserve on appeal the issue of whether the court abused its discretion in sustaining a demurrer without leave to amend [Code Civ. Proc., § 472c, subd. (a)], the plaintiff does have the burden on appeal to show how the trial court abused its discretion in [denying leave to amend]." (*Trustees of Capital Wholesale Electric etc. Fund v. Shearson Lehman Brothers, Inc*. (1990) 221 Cal.App.3d 617, 627.)

[8] To the extent Potts cursorily addresses these issues in her reply brief, her points are not supported by citations to the record or to relevant authorities. In any event, "[w]e

WestPac that Potts has not met her burden on appeal to show that the deficiencies in the FAC can be cured by amendment.  We conclude Potts has not established that the court below abused its discretion in denying leave to amend when it sustained WestPac's demurrer to the FAC.

## DISPOSITION

The judgment is affirmed.[9]  WestPac is entitled to its costs on appeal.

DESANTOS, J.

WE CONCUR:

DETJEN, Acting P. J.

MEEHAN, J.

---

do not consider arguments raised for the first time in the reply brief without a showing of good cause," which Potts did not make.  (*Champir, LLC v. Fairbanks Ranch Assn.* (2021) 66 Cal.App.5th 583, 591, fn. 3 [" 'Normally, a contention may not be raised for the first time in a reply brief.' "].)

[9]     Potts filed her notice of appeal in this matter on May 14, 2024.  Judgment in favor of WestPac was entered on July 7, 2025.  We have construed Potts's notice of appeal as applying to the judgment entered on July 7, 2025.

18.