A03A0907. KENNESTONE HOSPITAL, INC. v. HOPSON.
(589 SE2d 696)

MILLER, Judge.

Kennestone Hospital, Inc. sued Sherri Hopson in her home county of Gwinnett to recover amounts due for medical services. Hopson counterclaimed in tort, alleging that the hospital improperly released her mental health records to a third party. The hospital obtained summary judgment on the past due amounts, which judgment was not appealed, and then moved to have the case transferred to its home county of Cobb to have the counterclaim tried there. The Gwinnett court transferred the case to Cobb, but the Cobb court transferred the case back to Gwinnett. We granted an interlocutory appeal to resolve the question of where venue properly lies to try Hopson's counterclaim. We hold that since the hospital brought suit in Gwinnett, it consented to that court resolving the counterclaim, and therefore venue properly lies in Gwinnett. Accordingly, we affirm.

---

The relevant facts are undisputed. The hospital brought suit in Gwinnett State Court against Hopson (a resident of Gwinnett), claiming that she owed $704.37 plus interest in unpaid medical bills arising out of three visits to the hospital. One of those visits was for mental health treatment she received in March 1996. Hopson counterclaimed in various tort counts based on the hospital's alleged improper release (to a third party) of a copy of her mental health records from the March 1996 visit.

The hospital moved for summary judgment on its complaint and on all counts in the counterclaim, which motion the Gwinnett court granted. Not contesting the judgment on the medical bills, Hopson appealed the summary judgment on the counterclaim to this Court. In *Hopson v. Kennestone Hosp.*, 241 Ga. App. 829 (526 SE2d 622) (1999), we reversed, holding that Hopson had not waived the psychiatrist-patient privilege asserted in her counterclaim, and the Supreme Court of Georgia affirmed our decision. *Kennestone Hosp. v. Hopson*, 273 Ga. 145 (538 SE2d 742) (2000). The case was remanded to the trial court.

On remand, the hospital immediately moved to have the case transferred to Cobb County, its county of residence. The hospital argued that since the summary judgment on the complaint for medical bills was not appealed, that issue was no longer pending, leaving only the unrelated counterclaim against the hospital to be tried. The hospital claimed that since it was now the defendant, proper venue lay in its county of residence. The Gwinnett court agreed and held that because the counterclaim was not sufficiently related to the main claim, venue was improper in Gwinnett, and the court transferred the case to Cobb State Court.

Hopson then moved the Cobb court to transfer the matter back to Gwinnett. Holding that the counterclaim did not have to be related to the main claim originally filed in Gwinnett, the Cobb court transferred the case back to Gwinnett for disposition and certified its order for immediate review. To resolve this "ping-pong" match, we granted the hospital's application for interlocutory review.

1. The Georgia Constitution generally provides that a civil case shall be tried in the county where the defendant resides. Ga. Const. of 1983, Art. VI, Sec. II, Par. VI. Regarding counterclaims, Georgia law has long held that a party that files suit in a Georgia court submits himself to that court's jurisdiction and venue relating to all matters directly connected with the case that he had originated. *Ray v. Home & Foreign Investment &c. Co.*, 106 Ga. 492, 497 (5) (32 SE 603) (1899). "One who goes into the court of a county other than that of his residence, to assert a claim or set up an equity, must be content to allow that court to determine any counter-claim growing out of the original suit which the defendant sees fit to set up by a cross-action.

[Cits.]" Id.; accord *Brewer v. Williams*, 210 Ga. 341, 342 (4) (80 SE2d 190) (1954); see *Chamblee Constr. Co. v. Pickett*, 227 Ga. 421, 422-423 (181 SE2d 32) (1971). "The waiver of jurisdiction as to the non-resident's person, however, is limited to relief germane to and involved in the action which he starts." *Thomason v. Thompson*, 129 Ga. 440, 445 (1) (59 SE 236) (1907).

The first question is whether the requirement — that the counterclaim be related or germane to the main claim to have proper venue — survived the passage of the Civil Practice Act. That Act includes OCGA § 9-11-18 (a), which provides that "[a] party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim may join, either as independent or as alternate claims, as many claims, legal or equitable, as he has against an opposing party." These would include both compulsory counterclaims (which arise out of the transaction or occurrence that is the subject matter of the complaint) and permissive counterclaims (which are not so related to the complaint). OCGA § 9-11-13 (a), (b). Indeed, "[a] counterclaim may or may not diminish or defeat the recovery sought by the opposing party. It may claim relief exceeding in amount or different in kind from that sought in the pleading of the opposing party." OCGA § 9-11-13 (c). Thus, *Dixie Home Builders v. Waldrip*, 146 Ga. App. 464, 466 (246 SE2d 471) (1978), held that a permissive counterclaim that is a tort and that does not relate to the contract action asserted in the complaint — other than by a very broad definition of "set off" — could be pursued in the same action.

Some cases have held that one or more of these statutory provisions have eliminated the need for the counterclaim to be related to the main claim in order for venue to try the counterclaim to be proper in a county that is not the residence of the plaintiff. In *Hughes v. Hughes*, 193 Ga. App. 72 (387 SE2d 29) (1989), the nonresident plaintiff filed an action in Tattnall Superior Court for an equitable partitioning of certain real estate. The defendant asserted an independent and separate counterclaim that the plaintiff was wrongfully withholding certain personal property belonging to defendant, which counterclaim sought the return of the personal property or damages for conversion. The parties consented to the sale of the real estate to be partitioned, and the proceeds were distributed. The trial court then dismissed the counterclaim for want of jurisdiction, and the defendant appealed. We reversed, holding that under OCGA § 9-11-18, the separate and independent counterclaim was properly asserted, and that plaintiff's filing the action subjected her to the personal jurisdiction of Tattnall Superior Court. "The appellee's original action was both styled and pursued as an action to obtain relief against the appellant personally, and she will not now be heard to complain that she is inconvenienced by having to defend against the

appellant's counterclaim in his county of residence rather than in the state and county of her residence." (Citation omitted.) Id. at 73; see also *Henderson v. Kent*, 158 Ga. App. 206, 207 (1) (279 SE2d 503) (1981) (By filing its action, plaintiff "submitted itself generally to the jurisdiction of DeKalb County and cannot complain of being named a defendant in any valid counterclaim on the ground of lack of venue.").

Similarly, *Ledford v. Bowers*, 248 Ga. 804, 806-807 (2) (c) (286 SE2d 293) (1982), acknowledged the pre-CPA principle that venue for the counterclaim was only proper as to those counterclaims necessary for the defense of the main complaint, but went on to expand that doctrine to allow a defendant to counterclaim for a revision of child support *even though* such was not necessary to defend the main claim for change of custody. See generally *Shah v. Shah*, 270 Ga. 649, 650 (1) (513 SE2d 730) (1999) (OCGA § 9-11-18 (a) specifically authorizes the assertion of any additional existing claims against an original party).

On the other hand, other cases hold that the CPA did not diminish the requirement that a counterclaim be related to the main action to withstand a venue challenge. Quoting *Ledford*, supra, 248 Ga. at 806 (2) (c), *Global Fibers v. Foster*, 207 Ga. App. 1, 2 (1) (427 SE2d 3) (1992), held that "[i]n practice, the defendant generally has been allowed to assert only such affirmative relief against a nonresident plaintiff as is necessary for the defense of the main complaint." (Punctuation omitted.) Accord *Faulk v. Latham*, 194 Ga. App. 522, 523 (391 SE2d 7) (1990). Noting that the main complaint alleged that defendant had converted funds which the defendant in his counterclaim contended were due him as unpaid compensation, *Global Fibers* concluded that the claims were sufficiently related to withstand the venue challenge to the counterclaim. 207 Ga. App. at 2 (1). Similarly, *Goldstein v. Goldstein*, 229 Ga. App. 862, 864-865 (2) (a) (494 SE2d 745) (1997), held that "[t]he Civil Practice Act has not changed this principle" and concluded that the defendant was jurisdictionally permitted to assert only "such *affirmative* relief against appellant as is related to the defense against appellant's complaint." (Citations and footnote omitted; emphasis in original.) See also *Yount v. Mulle*, 266 Ga. 729, 730 (470 SE2d 647) (1996) (plaintiff, who invoked the jurisdiction of the Chatham County court to accomplish his ends, "could not then renounce it for a *related* cause unfavorable to him") (citation omitted; emphasis supplied); *Bragg v. Gavin*, 234 Ga. 70, 72 (214 SE2d 532) (1975) (counterclaim for defamation was "of similar enough nature [to a breach of warranty action] to allow a waiver of jurisdiction in order to try both actions before the superior court of the county where the original warranty action was filed").

2. We need not decide, however, whether the relatedness requirement is still viable. Here the counterclaim was sufficiently

related to the main claim to meet the relatedness requirement, and therefore under either approach the hospital consented to the Gwinnett court trying the counterclaim when it invoked the jurisdiction of that court to pursue its contract claim against Hopson.

The hospital in its main claim sought to recover for monies due arising out of the contractual relationship created between the hospital and Hopson when she sought and was given health care services from the hospital. Part of those services included mental health treatment. Hopson in her counterclaim alleges that the hospital improperly released the records of that mental health treatment, causing her damages that she seeks to recover in tort. The common nexus between the claims is the mental health treatment the hospital gave to Hopson, which led to certain contractual and legal obligations incurred by both parties. Indeed, the hospital admitted below that it was seeking to recover monies due "for the treatment at issue in Defendant's Counterclaim."

This commonality is not only sufficient to meet the broad similarity or connectedness test followed in *Bragg*, supra, 234 Ga. at 72, but it also meets the "arising out of the same transaction or occurrence" test used for determining whether a counterclaim is compulsory. See OCGA § 9-11-13 (a). As stated in *Myers v. United Svcs. Auto. Assn.*, 130 Ga. App. 357, 360 (203 SE2d 304) (1973), "the test to be applied in determining whether a counterclaim is compulsory is whether there is any logical relationship between the claim advanced by the plaintiff and the claim asserted by the defendant. Any claim that is logically related to another claim that is being sued on is properly the basis for a compulsory counterclaim." (Citations and punctuation omitted.) As in *Myers*, where the main claim arose out of the same contractual relationship as the counterclaim, the two claims are logically connected and the counterclaim is compulsory. Id. at 360-361. Accordingly, the counterclaim here was sufficiently related if not directly connected to the main claim to meet any remaining relatedness requirement so as to authorize venue in the Gwinnett County court. See *Faulk*, supra, 194 Ga. App. at 523.

The Cobb trial court did not err in transferring the case to Gwinnett for disposition of the counterclaim.

*Judgment affirmed. Ruffin, P. J., and Barnes, J., concur. Smith, C. J., disqualified.*

Decided November 14, 2003 — 

*Browning & Tanksley, Henry D. Green, Jr., Lawrence J. LoRusso*, for appellant.

*Beltran & Associates, Frank J. Beltran, Douglas V. Chandler*, for appellee.